**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:24-cr-103 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| DAVID A. SNELL, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING MOTION TO SUPPRESS AND**
**MEMORANDUM IN SUPPORT (DOC. NO. 28)**

---

The Court now considers Defendant David A. Snell's ("Snell") Motion to Suppress and Memorandum in Support (the "Motion") (Doc. No. 28). The United States of America (the "Government") has indicted Snell on criminal charges for the production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e), and several other counts related to the sexual abuse and exploitation of children. (*See* Doc. No. 27.) Briefly, in an effort to identify the individual associated with a number of online accounts suspected of engaging in child exploitation in early-to-mid-2024, law enforcement officials issued administrative third-party summonses to various online platforms like Reddit. (Doc. No. 33-16 at PageID 241.) As a result of those summonses, Snell was allegedly identified as the man behind the curtain. (*Id.* at PageID 242-45.) Now, Snell claims that the administrative tools used to investigate him ran afoul of the Fourth Amendment's general warrant requirement and he moves for suppression of all evidence derived therefrom. (*See* Doc. No. 28 at PageID 101-02.) For the reasons discussed below, the Court **DENIES** Snell's Motion.

1

I.     **BACKGROUND**

Law enforcement's investigation in this case began in March of 2024, when U.S. Homeland Security Special Agent Davis Mendelsohn ("SA Mendelsohn") spoke to a Reddit user going by the name Resident_Phrase7 in an undercover capacity.[1]  (Doc. No. 33-16 at PageID 222.) SA Mendelsohn started by posting publicly to Reddit, where he identified himself as a 12-year-old girl.  (*Id.*)  Shortly after, Resident_Phrase7 allegedly messaged SA Mendelsohn privately using the platform's direct messenger system.  (*Id.*)  SA Mendelsohn then proceeded to speak with Resident_Phrase7, still posing as a 12-year-old girl.  (*Id.*)  In the course of their conversation, Resident_Phrase7 allegedly asked to see the body of the young girl they thought they were speaking to.  (*Id.* at PageID 223.)  SA Mendelsohn ultimately lost contact with Resident_Phrase7 when the user did not respond to SA Mendelsohn's last message, delivered on April 3, 2024.  (*Id.*)

Meanwhile, after initially encountering Resident_Phrase7, SA Mendelsohn sought information from Reddit to ascertain the user's identity.  (Doc. No. 33-2.)  Specifically, on March 26, 2024, SA Mendelsohn sent an administrative summons to Reddit, Inc., requesting that the company provide Homeland Security Investigations ("HSI") with the following subscriber information for Reddit account user Resident_Phrase7:

> Username/subscriber identity, IP logs with port numbers (including registration IP), account creation date/time and the (*sic.*) user's name, email address, and phone number.

(*Id.* at PageID 154.)  Reddit complied with this HSI summons on April 2, 2024.  (Doc. No. 33-16 at PageID 223.)  In particular, Reddit allegedly indicated that the user account Resident_Phrase7 was associated with the email address, davesnell5@gmail.com, and an IP address maintained by

---

[1] For context, Reddit is a social media platform hosting a wide variety of community-led forums for public discussions. (Doc. No. 33-16 at PageID 221.)  Apart from these public posts, Reddit also enables users to exchange private messages with one another.  (*Id.*)

the internet service provider ("ISP") Altafiber. (*Id.*)

SA Mendelsohn followed up on the information Reddit had submitted on April 2 by conducting a Google search of the email address provided and issuing another administrative summons, this time to Altafiber. (Doc. Nos. 33-1; 33-16 at PageID 223.) Regarding his Google search, SA Mendelsohn supposedly learned that davesnell5@gmail.com had been publicly associated with a David Snell, living in Dayton, Ohio, as recently as 2018. (Doc. No. 33-16 at PageID 223.) With respect to Altafiber, SA Mendelsohn summonsed the following information from the ISP:

> **Subscriber Information**: For the IP address(es) listed below, any and all subscriber and customer information, including but not limited to: (1) subscriber name; (2) physical, billing and email address; (3) service or subscriber agreements; (4) length of service (including start date); (5) identification of account number; (6) means and source of payment for service (including any credit card or bank account number); (7) account logs or other logs reflecting accounts usage; (8) types of service; (9) additional screen names (including instant message) and Internet Protocol(IP) logs.

(Doc. No. 33-1 at PageID 150.) In service of this request, the summons listed the IP address identified by Reddit, along with seven specific dates and times. (*Id.*) Altafiber allegedly complied with SA Mendelsohn's request on April 12, 2024, by connecting the targeted IP address with a Nicole Matus ("Ms. Matus"), living in Dayton, Ohio. (Doc. No. 33-16 at PageID 223.) Subsequent investigation revealed Ms. Matus to be Snell's wife. (*Id.*)

There is little, if anything, more to be said of law enforcement's investigation until July 2024. On July 2, 2024, SA Mendelsohn received a report of a missing 17-year-old girl, identified in the First Superseding Indictment (Doc. No. 27) as "Minor 1." (Doc. No. 33-16 at PageID 224.) SA Mendelsohn was purportedly familiar with Minor 1 and her family from prior child exploitation investigations where Minor 1 had been victimized. (*Id.*) Hoping to find her daughter, Minor 1's mother turned over Minor 1's laptop and cell phone to local authorities and granted law

enforcement consent to access and search the devices. (*Id.*) When SA Mendelsohn accessed Minor 1's Reddit account and chat history, he found private messages between Minor 1 and five other Reddit user accounts that he believed to belong to a single person. (*Id.*) These private messages were allegedly exchanged in the immediately preceding months when Minor 1 was still 16 years old. (*Id.*) Without stating the particulars, the alleged content of those messages proved to be a mix of depraved communications, which included photo and video links to other third-party file sharing platforms like Dropbox where Minor 1 was depicted performing sex acts. (*Id.* at PageID 225-41.)

In the month that followed, SA Mendelsohn issued 13 more administrative summonses to various third parties, all in an effort to identify the individual Minor 1 had been speaking to on Reddit. (*See* Doc. Nos. 33-3 through 33-15; Doc. No. 33-16 at PageID 241-43.) Each summons requested basic subscriber information related to the Reddit accounts in contact with Minor 1. (*See* Doc. Nos. 33-3 through 33-15.) Notably, Reddit allegedly tied these five user accounts to the same IP address as Resident_Phrase7, the individual SA Mendelsohn spoke to in March while posing as a 12-year-old girl. (Doc. No. 33-16 at PageID 241.) Production by the corresponding ISP again identified Ms. Matus, in Dayton, Ohio, as the associated subscriber. (*Id.* at PageID 241-42.)

Additionally, throughout July and August of 2024, SA Mendelsohn continued to check law enforcement databases to monitor for CyberTipline reports made to the National Center for Missing and Exploited Children ("NCMEC"). (*Id.*) Pertinent here, on July 14, 2024, SA Mendelsohn allegedly located three reports made to NCMEC by Reddit on or around June 25, 2024. (*Id.* at PageID 241.) In short, Reddit reported instances of child exploitation on the platform, in connection with one of the user accounts that had communicated with Minor 1. (*Id.*) These reports allegedly came with images uploaded by the suspect user account, which Reddit reportedly

viewed and identified as child pornography.  (*Id.*)  A later NCMEC report made by Reddit on or around August 22, 2024, allegedly included an explicit private exchange between the user account and a suspected 17-year-old girl, identified in the First Superseding Indictment as "Minor 2."  (*Id.* at PageID 244.)

Having allegedly tied Snell to the sexual abuse and exploitation of children through the investigation described above, Snell was charged by criminal complaint on August 29, 2024.  (*See* Doc. No. 1.)  The grand jury returned a formal indictment against Snell several months later, on November 20, 2024. (Doc. No. 20.)  Finally, the grand jury returned a six count First Superseding Indictment against Snell on February 11, 2025.  (Doc. No. 27.)  In the end, Snell has been charged with: two criminal counts for the production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e); two criminal counts for the coercion and enticement of a minor, in violation of 18 U.S.C. § 2422(b); one criminal count for the distribution of child pornography, in violation 18 U.S.C. § 2251(a)(2) and (b)(1); and, one criminal count for the possession of child pornography involving a prepubescent minor, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).  (Doc. No. 27 at PageID 93-95.)

In short order, Snell filed his current Motion on February 21, 2025.  (Doc. No. 28.)  At the Government's request, and with Snell's consent, the Court vacated any suppression hearing to be held in this matter and set a briefing schedule for Snell's Motion.  (*See* Doc. No. 34.)  Pursuant to that briefing schedule, Snell filed a Brief in Support of Defendant's Motion to Suppress (the "Brief") (Doc. No. 36) on May 7, 2025.  The Government submitted the United States' Response in Opposition to Defendant's Brief in Support (the "Response") (Doc. No. 39) on May 27, 2025, and Snell filed his reply on June 6, 2025 (Doc. No. 41).  Accordingly, the Court finds Snell's Motion to be ripe for review and decision.

5

## II.    ANALYSIS

To start, a criminal defendant may seek the suppression of evidence by filing a pretrial motion with the Court. Fed. R. Crim. P. 12(b)(3)(C). "It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003). Generally, when a defendant seeks to suppress evidence obtained pursuant to a search, the propriety of that search must be tested against the Fourth Amendment of the United States Constitution. *See id.* at 644.

To that end, the Fourth Amendment provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. AMEND. IV. "[A]bsent certain exceptions," law enforcement may not conduct a search before obtaining "a warrant from a neutral and disinterested magistrate." *Franks v. Delaware*, 438 U.S. 154, 164 (1978). This right relies on the premise that a magistrate will not issue a search warrant without a showing of probable cause to justify the requested search. *U.S. v. Abboud*, 438 F.3d 554, 569 (6th Cir. 2006) ("Only if the magistrate finds probable cause can she issue a search warrant"). In all, the Fourth Amendment protects against unreasonable searches by "'requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Illinois v. Gates*, 462 U.S. 213, 240 (1983) (quoting *Johnson v. United States*, 333 U.S. 10, 13-14 (1948)) (alterations in original). With certain exceptions, any evidence obtained as a result of an unlawful search cannot be used as

6

evidence against the victim of the search. *Wong Sun v. U.S.*, 371 U.S. 471, 484 (1963) (citing *Weeks v. United States*, 232 U.S. 383 (1914)).

With these principles in mind, the Court looks to Snell's arguments in favor of suppressing evidence obtained without a warrant here. In essence, Snell advocates for the suppression of all evidence regarding his alleged online activity that law enforcement discovered by way of administrative summonses. (Doc. No. 36 at PageID 440.) Further, because information derived from those summonses formed the basis of a search warrant, Snell would have all evidence obtained as a result of that search warrant suppressed as well. (*Id.*) To his point, Snell argues that the summonses issued by SA Mendelsohn were so broadly worded as to solicit the contents of Snell's alleged private communications without the issuance of a warrant. (*Id.* at PageID 445-50.) Consequently, says Snell, law enforcement was able to circumvent his reasonable expectation of privacy, thus violating the Fourth Amendment. (*Id.*) Upon review, the Court finds Snell's position to be unsupported by either law or fact.

Consistent with the Supreme Court's holding in *Katz v. United States*, 389 U.S. 347 (1967), when considering a purportedly warrantless search "the application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740 (1979) (collecting cases) (internal quotation marks omitted). This standard demands a two-pronged inquiry: first asking, "whether the individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy'"; and, second, "whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Smith*, 442 U.S. at 740 (quoting *Katz*, 389 U.S. at 361). Here, there can be no question that Snell held a subjective expectation of privacy in the subscriber information that allegedly tied him to

7

Reddit accounts engaged in the sexual abuse and exploitation of children. Therefore, the Court need only concern itself with whether Snell's expectation is one that society is prepared to accept as reasonable.

With the advent of new technologies, courts must read the Fourth Amendment to keep pace with that technology, lest it "erode the privacy guaranteed by the Fourth Amendment" altogether. *Kyllo v. U.S.*, 533 U.S. 27, 34 (2001). The Supreme Court considered the privacy implications of such a technological advancement in *Carpenter v. United States*, 585 U.S. 296 (2018). There, the Supreme Court analyzed whether law enforcement needed to acquire a warrant before obtaining an individual's cell-site location information ("CSLI") from third-party wireless carriers. *See id.* This question was answered in the affirmative, with the court finding that CSLI offers a means to constantly track an individual's movements for indefinite periods of time. *Id.* at 310. The Supreme Court reasoned "that individuals have a reasonable expectation of privacy in the whole of their physical movements," and allowing law enforcement to obtain an individual's CSLI without a warrant "contravenes that expectation." *Carpenter*, 585 U.S. at 310-11 (citing *U.S. v. Jones*, 565 U.S. 400, 430 (2012) (J. Alito Concurring)). However, while the mere fact that certain information is maintained by a third-party will not defeat Fourth Amendment protections, the holding in *Carpenter* can only be narrowly applied to CSLI and other technological tools that track the whole of an individual's movements. 585 U.S. at 316.

Stepping away from the narrow holding in *Carpenter*, more generally, "the Fourth Amendment does not prohibit the obtaining of information revealed to a third party … even if the information is revealed on the assumption that it will be used for a limited purpose and the confidence placed in a third party will not be betrayed." *U.S. v. Jacobsen*, 466 U.S. 109, 117 (1984) (quoting *United States v. Miller*, 425 U.S. 435, 443 (1976)) (internal quotation marks

omitted). For instance, basic subscriber information such as an IP address, maintained by a third-party for the use of that third-party's services, may be gathered by law enforcement without upsetting the Fourth Amendment's warrant requirement. *United States v. Ammons*, 207 F. Supp. 3d 732, 739 (W.D. Ky. 2016) ("It is true that, as a general proposition, an individual does not possess a reasonable expectation [of privacy] in his IP address"); *see also United States v. Maclin*, 393 F. Supp. 3d 701, 708 (N.D. Ohio 2019). A subscriber to digital services will nevertheless "enjoy[] a reasonable expectation of privacy in the contents" of his private correspondences on a given platform. *U.S. v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010). Yet, once a third-party frustrates "the original expectation of privacy" by viewing the contents for itself and providing those contents to law enforcement, law enforcement need not obtain a warrant to view what was sent to them. *Jacobsen*, 466 U.S. at 117.

Returning to Snell's Motion, the Court first finds that the administrative summonses used to ascertain Snell's identity were not overly broad. Snell offers no case law to support his overbreadth argument and the language of the summonses at issue clearly sought basic subscriber information for an individual using multiple online services under varying usernames. As illustrated by the precedent cited above, such information is undoubtably fair game for an administrative summons. Indeed, the only party who seems to think the summonses were worded to impermissibly solicit the alleged contents of Snell's private communications is Snell. None of the providers summonsed returned substantive communications in response to SA Mendelsohn's summonses and a large contingent of the substantive communications SA Mendelsohn found were not turned over by third-party service providers at all. Instead, SA Mendelsohn acquired the bulk of Snell's alleged conversations by acting in an undercover capacity himself or by getting consent to view the contents of Minor 1's electronic devices. The substantive communications that were

9

provided by entities like Reddit were not responsive to an administrative summons, but were viewed and submitted through a tip line and discovered by SA Mendelsohn in the course of his independent investigation. SA Mendelsohn may never have even seen these documents if he had not thought to check the NCMEC database. Moreover, by the time SA Mendelsohn got his hands on these substantive communications, third-parties had already disrupted any reasonable expectation of privacy Snell might have had by viewing the documents before submitting a tip. Hence, the Court finds that the administrative summonses at issue here were not overbroad.

Getting to the heart of the matter, again, SA Mendelsohn only sought basic subscriber information with administrative summonses. The law is clear, Snell simply does not have a reasonable expectation of privacy in such information. For good measure, basic subscriber information does not track the whole of an individual's movements or otherwise intrude on the areas of an individual's life that he can expect to keep from public view. Rather, it amounts to information used to record an individual's identity. Along these lines, to say that Snell has a reasonable expectation of privacy in his online subscriber information is to say he has a reasonable expectation of privacy in his identity; an identity that he had to share with third-party service providers to access their platforms in the first place. The Court finds this notion to be wholly unsupported by relevant legal authority. Accordingly, the Court finds that the summonses issued by SA Mendelsohn in this case, and the evidence derived therefrom, do not amount to a "search" requiring a warrant under the Fourth Amendment.

**III.**     <u>**CONCLUSION**</u>

In conclusion, the Court hereby **DENIES** Snell's Motion to Suppress and Memorandum in Support (Doc. No. 28.)

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, July 7, 2025.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE